# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**AGNES XIE**,

Plaintiff,

v.

**SKLOVER & COMPANY, LLC, <u>et al.</u>**,

Defendants.

Case No. 1:15-cv-02020 (CRC)

## <u>MEMORANDUM OPINION</u>

A Fannie Mae employee has a few heated workplace disputes with her superiors at the company's Washington, D.C. headquarters. Fearing termination and suspecting legal violations on the part of her employer, she hires a two-partner, New York-based employment-law firm to represent her in the matter. Those partners are New York residents and are licensed only in New York and New Jersey, but their retainer contract assures the client that they litigate *pro hac vice* whenever necessary. The partners never physically travel to the District of Columbia in connection with their client's dispute, but either individually or on behalf of the firm, they: send numerous letters and emails to the D.C. employer, demanding a settlement and threatening litigation; file a complaint and engage in over a dozen conference calls with the Equal Employment Opportunity Commission ("EEOC") in D.C.; and schedule an EEOC mediation with the employer, to be held in D.C.—although they ultimately decline to attend the session. Later, the client brings a malpractice action against the partners and their current law firms in a federal district court in Washington. Does that court have personal jurisdiction over the lawyer-defendants?

This Court answers that question—which derives not from a 1L issue spotter, but rather from the facts of this case—in the affirmative. Because the retainer contract contemplated and

effected a "substantial connection" with this forum, <u>Helmer v. Doletskaya</u>, 393 F.3d 201, 205 (D.C. Cir. 2004), the Court may exercise personal jurisdiction to hear claims arising from that contract. The Court also considers Defendants' various other arguments for dismissal.

## I. Background

### A. Employment Dispute and Plaintiff's Retention of Sklover & Donath, LLC

Plaintiff Agnes Xie began her employment as a Financial Economist at Fannie Mae's Washington, D.C. office in March 2010. Pl.'s Opp'n Donath Defs.' Mot. Dismiss ("Pl.'s Opp'n Donath MTD"), Ex. 4B (EEOC Charge Form), ECF No. 44-3.[1] Apparently, as early as April 2010 and for roughly the next year, Xie noticed what she believed were defects in certain of the company's economic risk models, and she brought these perceived flaws to the attention of multiple superiors. <u>See</u> Pl.'s Opp'n Donath MTD, Ex. 3B, ECF No. 44-1, at ¶¶ 6–15. In the meantime, she was allegedly passed over for at least one position, <u>id.</u> at ¶ 9, and in July 2011 she was issued a disciplinary memo, which in Xie's view was grounded in false accusations, <u>id.</u> at ¶ 16. Soon afterwards, Xie's health began to decline, her work attendance became sporadic, and on November 18, 2011, she was given a notice of termination.[2]

In July 2011, around the time she received the disciplinary memo, Xie retained the New

---

[1] As discussed further below, the Court must evaluate different constellations of fact depending on the ground for dismissal. Because the Court "may receive and weigh affidavits and other relevant matter to assist in determining jurisdictional facts," <u>Khatib v. All. Bankshares Corp.</u>, 846 F. Supp. 2d 18, 26 (D.D.C. 2012) (quoting <u>D'Onofrio v. SFX Sports Grp., Inc.</u>, 534 F. Supp. 2d 86, 89 (D.D.C. 2008)), the factual account that follows draws from materials beyond the pleadings. However, when resolving the Sklover Defendants' Rule 12(b)(6) motion, the Court has considered only Xie's factual allegations and the documents referenced in her complaint. <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007) (a court must consider the complaint and "documents incorporated into the complaint by reference" in resolving a Rule 12(b)(6) motion).

[2] Xie was not ultimately terminated until May 4, 2012. She was approved for a six-month medical and short-term disability leave effective November 7, 2011, which postponed her termination date until after the expiration of the leave period. <u>See</u> Fourth Am. Compl. ¶ 10.

York employment-law firm of Sklover & Donath, LLC—headed by named partners Alan

Sklover and Sheree Donath—to represent her in connection with an anticipated legal dispute

with Fannie Mae. Fourth Am. Compl. ¶ 7, ECF No. 20. The retainer agreement set forth a fee

schedule, along with a list of "client's rights," which included the assurance that Xie would "be

kept informed as to the status of [her] matter" and would be given "sufficient information to

allow [her] to participate meaningfully in the development of her matter." Pl.'s Opp'n Donath

MTD, Ex. 1, ECF No. 44, at 8.[3] The contract also noted that, although the firm's attorneys "are

admitted to practice law only in New Jersey and New York State," they "are permitted to provide

advice on methods and strategies of negotiation to individuals worldwide, without limitation,"

and that "[w]hen we appear in courts in other states, we first gain admission on a case-by-case

(called '*pro hac vice*' admission) basis, and work with local counsel." Id. at 3.[4]

B. Sklover & Donath, LLC's Representation of Plaintiff

Several months later, Donath sent a notice of representation letter via Federal Express

and email to Fannie Mae's Associate General Counsel, addressed to the company's Legal

Department at its Washington, D.C. headquarters. See Pl.'s Opp'n Donath MTD, Ex. 4A, ECF

No. 44-3, at 2. In the letter, Donath noted that the law firm represented Xie "with respect to her

employment with and [potential] termination from Fannie Mae"; that the firm had "concluded

that Ms. Xie has considerable legal claims against Fannie Mae," including claims of retaliation

and discrimination, and violations of the Family and Medical Leave Act ("FMLA"); and that,

---

[3] For the sake of clarity, when referring to exhibits, the Court will cite ECF page numbers unless otherwise noted.

[4] There appear to have been two versions of the retainer agreement, because two non-identical pages numbered "3" have been included with the exhibit. One version indicates that the firm's attorneys are licensed only in New York. For the purposes of this motion, however, it is irrelevant which of the two versions was operative, since no party alleges that any discrepancies between the two versions are material.

whether "by discussion or by litigation/arbitration," the claims would "by one means or another[]

be resolved." Id. at 2–4.  The following month, Donath sent a second letter to Fannie Mae Legal

on behalf of Sklover & Donath, LLC, following up on the previous communication and attaching

an affidavit signed by Xie.  Id. at 5–21.  The affidavit was titled "In Contemplation of

Litigation."  Id. at 7–21.

In April 2012, Donath and Sklover assisted Xie in preparing, drafting, and reviewing a

complaint to be lodged with the D.C.-based EEOC and the D.C. Office of Human Rights

("DCOHR").  See Pl.'s Sur-Reply in Opp'n Donath MTD, Attachment 11, ECF No. 54-11.  On

April 25, 2012, Donath notarized and filed that complaint with the EEOC and DCOHR.  See

Pl.'s Opp'n Donath MTD, Ex. 4B, ECF No. 44-3; Fourth Am. Compl. ¶ 9.[5]  In mid-May, Donath

sent a third letter to Fannie Mae's Legal Department, notifying it of the filing with EEOC and

DCOHR and providing further updates.  See Pl.'s Opp'n Donath MTD, Ex. 4A, ECF No. 44-3,

at 22–24.  The letter once again indicated that a resolution would be obtained "either through

settlement or arbitration and/or litigation," with the choice being "entirely up to Fannie Mae."

Id. at 24.  At the end of the month, Fannie Mae's Associate General Counsel responded via email

to the letter, stating the company's position that "it did not wrong Ms. Xie in any way" and

asserting its "plans to fully defend against Ms. Xie's EEOC charge and any claims she may bring

in arbitration."  Pl.'s Opp'n Donath MTD, Ex. 6B, ECF No. 45.

---

[5] Donath notes that the EEOC complaint form itself contains "no indication that it was
filed and/or submitted by Ms. Donath."  Def. Donath's Reply Supp. Mot. Dismiss ("Donath
Reply") 2.  But Defendants nowhere contest Xie's allegation that Donath "prepared and filed"
the complaint.  Accordingly, although the Court may look beyond the pleadings in resolving a
jurisdictional question, see infra section II.A, Defendants have offered nothing by way of
argument or evidence that would cause the Court to question Xie's allegation on this point.
Given Donath's assertion that she never appeared in the District of Columbia in connection with
Xie's claims, see Def. Donath's Mot. Dismiss ("Donath MTD"), Affidavit of Sheree Donath
("Donath Aff.") ¶ 3, the Court presumes that Donath submitted Xie's complaint electronically.

From May through August of 2012, billing records reflect that Donath engaged in over a dozen telephone conferences with the EEOC, in addition to frequent email correspondence. See Pl.'s Sur-Reply in Opp'n Donath MTD, Attachments 12–15, ECF Nos. 54-12 to 54-15. In the middle of June, Donath learned from the EEOC that Xie's complaint was being considered for possible mediation, and she passed that information along to her client. Pl.'s Opp'n Donath MTD, Ex. 6A, ECF No. 44-4, at 2. A mediation session was confirmed for July 25, 2012 at a Washington, D.C. EEOC office, and Skover was slated to accompany Xie to the session. Id. at 2, 5. However, Sklover later apparently "declined to attend" the session. Fourth Am. Compl. ¶ 14. It is unclear why, or even whether the mediation session actually occurred. In any event, at some point thereafter, the matter was submitted to an EEOC investigator, and judging from billing records, the case appears to have gone dormant. See Pl.'s Sur-Reply in Opp'n Donath MTD, Attachments 16–19, ECF Nos. 54-16 to 54-19. On November 19, 2013, the EEOC sent Xie a "Dismissal and Notice of Rights" form, indicating that the agency was closing her file because its investigation had been inconclusive as to whether Fannie Mae had violated any of the relevant statutes. Pl.'s Opp'n Donath MTD, Ex. 4C, ECF No. 44-3, at 29. The form also included a section entitled "Notice of Suit Rights," advising that any lawsuit arising from the EEOC charge "must be filed within 90 days of your receipt of this notice." Id. Copied on the notice were Fannie Mae and Sheree Donath, at Sklover & Donath, LLC. Id.

C.  Plaintiff's Loss of Contact with the Firm and *Pro Se* Arbitration Proceedings

Xie alleges that, after receiving the EEOC Notice, she attempted to contact both Sklover and Donath for advice and "recommendations" and sought to make "appointments to talk about the issue," but that they "ignored" her. Fourth Am. Compl. ¶¶ 21, 24. As it turned out, Donath had taken a leave of absence from the firm beginning January 2013, and had departed

permanently in March of the same year.  Donath Defs.' Mot. Dismiss ("Donath MTD"), Affidavit of Sheree Donath ("Donath Aff.") ¶¶ 7–8.  But Xie alleges that she was never given notice of that change.  See Fourth Am. Compl. ¶ 13.  As for Sklover, Xie alleges that he finally responded to her in April 2014, roughly five months after she had received the EEOC Notice and sought the firm's advice.  Id. at ¶ 25.  By then, due to the 90-day deadline for filing suit, it was too late to pursue any of the claims set forth in her EEOC complaint.

In October 2014, now proceeding *pro se*, Xie brought an arbitration action against Fannie Mae, asserting various claims of discrimination and retaliation.  See Fourth Am. Compl. ¶ 26; Pl.'s Opp'n Donath MTD, Ex. 3C, ECF No. 44-2, at 4.  Later, in September 2015, Xie amended her arbitration demand in order to bring a total of fifteen claims:  She asserted violations of Title VII, § 1981, FMLA, the D.C. Human Rights Act ("DCHRA"), the D.C. Family and Medical Leave Act, the D.C. Wage Payment Act, and various common law causes of action.  See Pl.'s Opp'n Donath MTD, Ex. 3B, ECF No. 44-1.  In opinions issued in August and November 2016, on Fannie Mae's motion, the arbitrator dismissed all but three of these claims as time-barred, since they were filed after the expiration of the relevant statutory limitations period.  See generally Pl.'s Opp'n Donath MTD, Ex. 3C, ECF No. 44-2.[6]

D.  Plaintiff's Malpractice Suit in this Court

While the arbitration proceedings were ongoing, in November 2015, Xie brought a legal malpractice claim in this Court.  See Compl., ECF No. 1.  She then filed three amended complaints, see ECF Nos. 6, 8, 10, plus a Fourth Amended Complaint, which is operative.  See

---

[6] Xie has attached only portions of the arbitrator's November 2016 decision, and none of the August decision, so the reasoning underlying the dismissal of these claims is not fully discernible.

Fourth Am. Compl., ECF No. 20.[7]  That Complaint names the following Defendants, all with

New York addresses: Alan Sklover and Sheree Donath, in their individual capacities; Sklover's

current law firm and Sklover & Donath, LLC's successor, Sklover & Company, LLC; and

Donath's current law firm, Donath Law, LLC.  Id. at ¶¶ 3–6.  Although Xie claimed to be a

Virginia resident in her first several complaints, she now alleges District of Columbia

citizenship, Fourth Am. Compl. ¶ 1, which is corroborated by her D.C. driver's license.  See Pl.'s

Sur-Reply in Opp'n Donath MTD, Attachment 1, ECF No. 54-1.  Xie brings claims of legal

malpractice, breach of contract, and breach of fiduciary duty, grounded in the above alleged

facts.  In particular, Xie asserts that:  Defendants failed to provide her with timely legal advice,

especially in connection with the EEOC Notice; failed to timely inform her that Donath, her

primary attorney and point of contact, had departed the firm and was no longer working on Xie's

matter; failed to assert all viable claims before Fannie Mae, the EEOC, and D.C.'s Office of

Human Rights; and failed to preserve her rights by timely filing suit within the relevant statutory

limitations period.  See Fourth Am. Compl. ¶ 39.

Defendants now move to dismiss, on various grounds.  Donath moves under Federal Rule

of Civil Procedure 12(b)(2), arguing that this Court lacks both general and specific personal

jurisdiction over her.  Donath emphasizes that she is a New York lawyer who resides in New

York; that Sklover & Donath, LLC—the law firm Xie retained and where Donath used to

work—was located exclusively in New York; that Donath never traveled to D.C. in connection

---

[7] Under Federal Rule of Civil Procedure 15(a)(2), Xie was required to seek leave to file all amended complaints after the First Amended Complaint, which was permitted as a matter of course.  See Fed. R. Civ. P. 15(a)(1).  Although she failed to seek leave, following a telephone conference held on January 30, 2017, and in light of Xie's *pro se* status, the Court granted Xie leave to file the Fourth Amended Complaint, while instructing that no further amended complaints should be filed without permission of Court.  See Minute Order, Jan. 30, 2017.

with representing Xie; and that all of her communications with Xie happened either remotely or in New York.  See generally Donath MTD.  In their separate dismissal motion, Sklover and Sklover & Company, LLC offer similar personal jurisdictional arguments.  Sklover Defs.' Mem. Supp. Mot. Dismiss ("Sklover MTD") 9–11.  They also request dismissal due to insufficient service of process and for failure to state a claim for relief.  Id. at 8–9, 11–18.  Donath Law, LLC offers its own reasons for dismissal:  It argues that it has no viable connection to this litigation, being formed several months after Xie brought suit in this Court, and that consequently Xie has not stated a plausible claim against it or established personal jurisdiction over it.  See Donath Law, LLC Defs.' Mem. Supp. Mot. Dismiss ("Donath LLC MTD") 6–12.  The Court considers each of these arguments in turn.

## II.  Legal Standard

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

In resolving a motion to dismiss for lack of personal jurisdiction, the Court is not limited to the four corners of the operative complaint, but rather "may receive and weigh affidavits and other relevant matter to assist in determining jurisdictional facts."  Khatib v. All. Bankshares Corp., 846 F. Supp. 2d 18, 26 (D.D.C. 2012) (quoting D'Onofrio v. SFX Sports Grp., Inc., 534 F. Supp. 2d 86, 89 (D.D.C. 2008)).  "The plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant."  Crane v. N.Y. Zoological Soc., 894 F.2d 454, 456 (D.C. Cir. 1990) (citing Reuber v. United States, 750 F.2d 1039, 1052 (D.C. Cir. 1984)).  However, to the extent there are material "factual discrepancies appearing in the record," they "must be resolved in favor of the plaintiff."  Id.

A federal court sitting in diversity may exercise personal jurisdiction over a defendant only if a state court of general jurisdiction in the same district would have such jurisdiction.  See

Fed. R. Civ. P. 4(k)(1).  Accordingly, when a federal court's subject-matter jurisdiction is grounded in diversity of citizenship, state law—here, D.C. law—is applied in resolving questions of personal jurisdiction.  Crane, 894 F.2d at 455.

B.  Motion to Dismiss for Insufficient Service and Insufficient Service of Process

Under Rule 12(b)(4), a defendant may move for dismissal due to "insufficient process." Fed. R. Civ. P. 12(b)(4).  "A motion under 12(b)(4) concerns the form of the process rather than the manner or method of its service," and accordingly "is proper only to challenge noncompliance with a provision . . . that deals specifically with the content of the summons." United States v. Levine, 2012 WL 1570811, at *1 (D. Mass. 2012) (citation omitted).  Rule 12(b)(5), by contrast, allows a party to move to dismiss a complaint for "insufficient service of process."  Fed. R. Civ. P. 12(b)(5).  A "Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." Candido v. D.C., 242 F.R.D. 151, 162 (D.D.C. 2007) (citation omitted).

When a defendant moves to dismiss under Rules 12(b)(4) or 12(b)(5), "the plaintiff has the burden of establishing the validity of service of process."  Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries, 288 F.R.D. 230, 231 (D.D.C. 2013).  However, any "objection to insufficiency of process or its service should point out specifically in what manner the plaintiff has failed to satisfy the requirements of the service provision that was utilized."  5B C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1353 (3d ed.) (citing O'Brien v. R. J. O'Brien & Associates, Inc., 998 F.2d 1394 (7th Cir. 1993); Photolab Corp. v. Simplex Specialty Co., 806 F.2d 807, 810 (8th Cir. 1986)).

C.  Motion to Dismiss for Failure to State a Claim for Relief

To survive a 12(b)(6) motion, a "complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court

"accept[s] as true all of the allegations contained in [the] complaint," disregarding "[t]hreadbare

recitals of the elements of a cause of action" and "mere conclusory statements." Iqbal, 556 U.S.

at 678. Then, the Court examines the remaining "factual content [to determine if it may] draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court

must also consider "documents incorporated into the complaint by reference." Tellabs, Inc. v.

Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). "*Pro se* complaints are held 'to less

stringent standards than formal pleadings drafted by lawyers.'" Henthorn v. Dep't of Navy, 29

F.3d 682, 684 (D.C. Cir. 1994) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

## III. Analysis

### A. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

Because the relevant arguments substantially overlap, the Court first considers whether it

must dismiss Xie's claims for lack of personal jurisdiction over Donath, in her individual

capacity; Sklover, in his individual capacity; and Sklover & Company, LLC.[8]

There are two types of personal jurisdiction: "general or all-purpose jurisdiction, and

specific or case-linked jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564

U.S. 915, 919 (2011). General jurisdiction applies regardless of the nature of the claim, but it is

only available based on "a limited set of affiliations with a forum." Daimler AG v. Bauman, 134

S. Ct. 746, 760 (2014). "For an individual, the paradigm forum for the exercise of general

jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which

_____

[8] The Court considers Donath Law, LLC's motion to dismiss elsewhere. See infra
section III.C.

the corporation is fairly regarded as at home." Daimler, 134 S. Ct. at 760 (quoting Goodyear, 564 U.S. at 924). Under D.C. law, there is general jurisdiction over a defendant who is "domiciled in, organized under the laws of, or maintaining his or its principal place of business in" the District. D.C. Code § 13-422. Xie has not alleged any facts that would establish general personal jurisdiction over any of the Defendants: All are domiciled in New York, and the organizational Defendants have their principal places of business in New York.

### 1. *Principles Governing Specific Jurisdiction Under D.C. Code § 13–423*

The analysis is not so simple, however, for *specific* personal jurisdiction, which "is confined to adjudication of issues deriving from, or connected with, the very [forum-related] controversy that establishes jurisdiction." Goodyear, 564 U.S. at 919. Specific personal jurisdiction is present where "(1) jurisdiction over the defendant [is] authorized by the forum's long-arm statute, here D.C. Code § 13–423; and (2) the exercise of that jurisdiction [satisfies] the federal requirement of constitutional due process." Exponential Biotherapies, Inc. v. Houthoff Buruma N.V., 638 F. Supp. 2d 1, 6 (D.D.C. 2009) (quoting D'Onofrio, 534 F. Supp. 2d at 89) (alterations in original).

Under the District of Columbia's long-arm statute, a "court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). Section 13-423(a)(1)'s "transacting any business" clause "is 'given an expansive interpretation' that is 'coextensive with the due process clause.'" Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004) (quoting Mouzavires v. Baxter, 434 A.2d 988, 992 (D.C. 1981)). Accordingly, where § 13-423(a)(1) is at issue, the statutory and constitutional prongs of the personal jurisdiction inquiry merge into one overriding question: Have the defendants in

question "purposefully established 'minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice[?]'" Helmer, 393 F.3d at 205 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

It has long been established that a defendant has such minimum contacts if he "enters into a contract that has a 'substantial connection' with the forum." Helmer, 393 F.3d at 205 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). In evaluating whether the contract in question has that requisite "substantial connection," courts are to weigh such factors as the parties' "prior negotiations," the "contemplated future consequences" of the contract, the "terms of the contract," and "the parties' actual course of dealing." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985). This context-specific, fact-intensive approach derives from the recognition that a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." Burger King, 471 U.S. at 479 (quoting Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 317 (1943)).

    2.   *Application of D.C. Code § 13–423(a)(1) and the "Substantial Connection" Test to this Case*

Applying these principles here, it is evident that the retainer contract Xie signed with Sklover & Donath, LLC had a "substantial connection" with the District of Columbia.[9] Beginning with the basics, Xie retained the firm, which specialized in employment law, to

---

[9] Although, as a formal matter, Xie signed a contract with Sklover & Donath, LLC, individual Defendants Donath and Sklover—who were firm partners at the time—do not seek to avoid personal liability on the grounds that only the *firm* was liable for the alleged malpractice. See Rothstein v. Equity Ventures, LLC, 299 A.D.2d 472, 474 (2002) ("[M]embers of limited liability companies, such as corporate officers, may be held personally liable if they participate in the commission of a tort in furtherance of company business.").

represent her in connection with a single matter: current and anticipated legal disputes with her

D.C. employer, Fannie Mae.  Although the contract included the caveat that the firm's attorneys

were "admitted to practice law only in New Jersey and New York State," it also suggested that

the firm could do (and regularly did) legal work beyond those jurisdictional boundaries.  Pl.'s

Opp'n Donath MTD, Ex. 1, ECF No. 44, at 8.  For instance, the firm assured Xie that its

attorneys could "provide advice on methods and strategies of negotiation to individuals

worldwide, without limitation," and that "*[w]hen* we appear in courts in other states, we first

gain admission on a case-by-case (called '*pro hac vice*' admission) basis, and work with local

counsel."  Id. (emphasis added).  The retainer agreement, under the circumstances,

"contemplated" a broad range of  "future consequences," Burger King, 471 U.S. at 479, ranging

from negotiations with D.C.-based Fannie Mae, administrative action before a D.C. employment-

law agency (either the EEOC or DCOHR), or litigation against Fannie Mae in a D.C. court.  The

common denominator, though, was location:  Contract-related actions would likely either target

D.C. or occur within it.

The "parties' actual course of dealing," Burger King, 471 U.S. at 479, further supports

the conclusion that the retainer contract was substantially connected to the District.  Donath, on

behalf of the firm, sent at least three demand letters to Fannie Mae's Legal Department in D.C.

See Pl.'s Opp'n Donath MTD, Ex. 4A, ECF No. 44-3.  The first letter stated that Sklover &

Donath represented Xie, and warned that "by one means or another[]," i.e., "by discussion or by

litigation/arbitration," the "claims would be resolved."  Id. at 2–4.  Another letter attached a

detailed affidavit entitled "In Contemplation of Litigation."  Id. at 7–21.  Later, Donath and

Sklover each assisted Xie in drafting, preparing, and reviewing a complaint to be lodged with the

D.C.-based EEOC and the DCOHR, see Pl.'s Sur-Reply in Opp'n Donath MTD, Attachment 11,

ECF No. 54-11, and Donath went on to file that complaint with those agencies, see Pl.'s Opp'n Donath MTD, Ex. 4B; Fourth Am. Compl. ¶ 9.  In the months following that submission, Donath communicated frequently—via telephone and email—with the EEOC.  See Pl.'s Sur-Reply in Opp'n Donath MTD, Attachments 12–15, ECF Nos. 54-12 to 54-15.  Matters came to a head, or nearly so, when the EEOC confirmed a July 25, 2012 mediation session at the EEOC's Washington, DC Office, which Sklover was scheduled to attend.  Pl.'s Opp'n Donath MTD, Ex. 6A, ECF No. 44-4, at 2, 5.

These various mailings, telephone calls, emails, filings, and negotiation sessions directly and purposefully targeted D.C.-based individuals and entities.  In connection with the retainer contract, they therefore constitute "transacting . . . business in the District of Columbia" under § 13-423(a)(1), particularly under the expansive reading D.C. courts have applied to that provision.  See Mouzavires v. Baxter, 434 A.2d 988, 992 (D.C. 1981) ("It is now well-settled that the 'transacting any business' provision [of § 13-423] embraces those contractual activities of a nonresident defendant which *cause a consequence* here." (emphasis added)); see also Overseas Partners, Inc. v. PROGEN Musavirlik, 15 F. Supp. 2d 47, 51 (D.D.C. 1998) (applying same reading of § 13-423's "transacting business" provision); Schwartz v. CDI Japan, Ltd., 938 F. Supp. 1, 5 (D.D.C. 1996) (same).  That conclusion is also in line with the holdings of other cases in this District, which have found personal jurisdiction over nonresident defendants based on "the conduct of negotiating, performing, or soliciting business contracts within" the forum. Abramson v. Wallace, 706 F. Supp. 1, 2 (D.D.C. 1989); see also Exponential Biotherapies, 638 F. Supp. 2d at 7 n.4 (collecting cases).

Donath makes much of the fact that neither she, Sklover, nor any agent of the firm "appeared in the District of Columbia or did anything in the District . . . except to file [an

administrative] complaint." Donath MTD 1; see also id. at 8 (arguing that "letters and telephone communications [from a nonresident to] a resident [are] not sufficient for personal jurisdiction"); Sklover MTD 10–11 (arguing Defendants had insufficient contacts with the District to warrant establishing personal jurisdiction over them). But the Supreme Court has made clear that physical presence is not a prerequisite for the exercise of personal jurisdiction over a defendant:

> Jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. *So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.*

Burger King, 471 U.S. at 476. See also Mouzavires, 434 A.2d at 995 ("Courts have recognized that, even though a nonresident defendant has never physically been present in the forum, his contacts with the forum when viewed qualitatively may be quite substantial. Thus, *the exercise of personal jurisdiction has been sustained where the nonresident defendant's only contact with the forum has been by mail or telephone.*" (emphasis added)). In light of this precedent, and given the retainer contract's "substantial connection" to the forum, Defendants cannot escape the reach of D.C.'s long-arm statute merely because they never set physical foot in the District while representing Xie.

Donath also cites cases where personal jurisdiction was found lacking over nonresident defendant law firms, but they are distinguishable because none of the contracts at issue had a "substantial connection" to the District of Columbia. In Exponential Biotherapies, Inc. v. Houthoff Buruma N.V., 638 F. Supp. 2d 1 (D.D.C. 2009), a fellow court in this District held there was no personal jurisdiction over a Dutch law firm in a malpractice suit brought by one of

the firm's clients, a Delaware corporation based in Washington.  Id. at 4–6.  The firm had been

retained "to provide legal services for a transnational financing and corporate structuring" in the

Netherlands, although the firm did communicate frequently with the client corporation in D.C.

via email, telephone, and other means.  Id. at 4, 7.  The court reasoned as follows:

> Neither [the firm's] act of contracting to provide legal services to [the client
> corporation], nor its representation of [the corporation] in the Netherlands, subjects
> [the firm] to suit in D.C.  While negotiating or performing business contracts has
> qualified as "transacting business" for purposes of § 13–423(a)(1), entering into a
> contract with an out-of-state party does not by itself . . . establish minimum contacts
> or constitute purposeful availment.  There must be a "substantial connection"
> between the contract and the forum, which often exists where the contract is to be
> performed, in whole or in part, in D.C.  Where the contract was "neither made nor
> performed in the District, and no services were provided or to be provided here,"
> the contract does not justify the exercise of personal jurisdiction over the non-
> resident defendant.

Id. at 7–8 (citations omitted).  The court's analysis highlights the material fact that was absent

there but present here: a contract with a "substantial connection" to D.C.  The defendant firm in

Exponential Biotherapies signed a contract contemplating work in the Netherlands; the contract

here contemplated representing Xie in a D.C.-based employment dispute.

Similarly, the court in Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403 (Fed. Cir.

2009), considered whether a federal district court in the Eastern District of Virginia could

exercise personal jurisdiction over a Canadian intellectual-property-law firm in a malpractice suit

brought by the Canadian inventor of a novel pump system.  Id. at 1407.  The inventor hired the

firm "to file and prosecute the necessary patent applications . . . for his invention in Canada, the

United States, and various European countries."  Id.  In the course of prosecuting these patents, a

partner at the firm transmitted a bundle of documents to the United States Patent and Trademark

Office ("USPTO") in Alexandria, Virginia.  Id. at 1408.  The Touchcom court concluded that

this "act of filing an application for a U.S. patent at the USPTO" could not alone establish

personal jurisdiction over the filing attorney under Virginia's long-arm statute, which is also coextensive with due process. Id. at 1409.[10] Again, the material distinction between the facts in Touchcom and those here is the nature of the contract at issue: While Xie retained Sklover & Donath solely to represent her in connection with a D.C.-based employment dispute, the inventor in Touchcom retained a Canadian law firm to prosecute patents *internationally*. Furthermore, although the Touchcom contract contemplated prosecuting U.S. patents (among numerous others), it did not specifically implicate the relevant forum (Virginia). It therefore could not be said that the contract at issue in Touchcom had a "'substantial connection' with the forum," Helmer, 393 F.3d at 205.[11]

Donath's remaining arguments may be addressed briefly. She emphasizes the retainer contract's specific caveat about the firm's attorneys being licensed only in New York and New Jersey. See Donath Reply 2, 5. But "membership in a state Bar does not have any impact on the jurisdictional analysis." Beach TV Properties, Inc. v. Solomon, No. CV 15-1823 (RC), 2016 WL 6068806, at *8 (D.D.C. Oct. 14, 2016) (quoting Lans v. Adduci Mastriani & Schaumberg L.L.P., 786 F. Supp. 2d 240, 284 (D.D.C. 2011)). Instead, what matters is the actual legal practice contemplated and effectuated by the relevant contract, which in this case included litigation in

---

[10] The court ultimately found personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), which applies only where a claim arises under federal law (and so does not apply here). Touchcom, 574 F.3d at 1418.

[11] Donath also cites Beach TV Properties, Inc. v. Solomon, No. CV 15-1823 (RC), 2016 WL 6068806 (D.D.C. Oct. 14, 2016), which relied on Touchcom to conclude that the "mere act of filing with a federal agency" does not confer personal jurisdiction over the filer. Id. at *8. The parties did not brief and the court did not analyze whether the relevant contract had a "substantial connection" with D.C., but it placed significant weight—as did the Touchcom court—on the fact that the defendant in question had never *physically* traveled to the forum in connection with the relevant business. See Beach TV, 2016 WL 6068806, at *8; Touchcom, 574 F.3d at 1412. To the extent that analysis was dispositive in either opinion, it is at odds with the controlling guidance outlined above. See Burger King, 471 U.S. at 476; Mouzavires, 434 A.2d at 995.

D.C., through *pro hac vice* admission.  See Pl.'s Opp'n Donath MTD, Ex. 1 at 7, ECF No. 44.

Donath also argues that Xie's claims "do not relate to any alleged [forum-related] act or

omission that occurred as part of the administrative complaints to [the] EEOC," but rather "to

what came after that process," i.e., the alleged failure to timely notify her of the EEOC Notice.

Donath Reply 3.  That argument is based on a misreading of Xie's complaint.  Some of her

allegations arise directly from D.C.-based actions (for example, purportedly submitting an EEOC

complaint without key, viable claims), and other of Xie's contentions arise from alleged

omissions that *should* have occurred in the District (for example, supposedly failing to timely

litigate her suit with local counsel).  See Fourth Am. Compl. ¶ 39.  More to the point, all of Xie's

claims arise out of the retainer contract, which—as previously discussed—has a "substantial

connection" to D.C.

### 3.  *Remaining Due Process Considerations*

Finally, the Court finds that asserting personal jurisdiction over Donath would not

"offend traditional notions of fair play and substantial justice."  Helmer, 393 F.3d at 205 (quoting

Int'l Shoe, 326 U.S. at 316).  Defendants "voluntarily . . . engaged in a transaction which had a

substantial connection with the District and which they foresaw would have consequences here,"

and thereby "invoked the benefits and protections of the District's laws."  Mouzavires, 434 A.2d

at 997.  Accordingly, there is no due process rationale that would preclude exercising personal

jurisdiction over them.  If anything, considerations of "fair play and substantial justice" counsel

in favor of hearing Xie's suit under these circumstances.  Without indicating any view on the

merits of this case, the Court notes that a contrary holding might permit attorneys to escape suit

in a client's home forum by resisting any in-person demands of the profession—such as

mediation or litigation—even when those activities are warranted.  In other words, it would

permit attorneys to avoid legal malpractice litigation by committing legal malpractice. For these reasons, where a defendant-attorney has agreed to represent a client in a matter with a substantial connection to a particular forum, there are equitable grounds for hearing claims arising from that representation, in that forum.

The Court therefore concludes that it may exercise specific personal jurisdiction over Donath, Sklover, and Sklover & Company, LLC, pursuant to D.C. Code § 13-423(a)(1).[12]

B. <u>Alan Sklover and Sklover & Company, LLC's Motion to Dismiss</u>

Defendants Alan Sklover and Sklover & Company, LLC, separately argue for dismissal on two additional grounds: insufficient process and insufficient service of process, under Rules 12(b)(4) and (5); and failure to state a claim, under Rule 12(b)(6). <u>See</u> Sklover MTD 8–9, 11–18. The Court now addresses these arguments.

*1. Service of Process*

As recounted above, Xie first brought suit in this court in November 2015. Roughly five months later, in March 2016, Xie filed a "Proof of Service" form, indicating—without attaching any verification—that a third party had served Sklover & Company, LLC via certified mail.[13] <u>See</u> ECF No. 9. In October 2016, the Court entered a Minute Order noting that Plaintiff had failed to properly serve any Defendants, and directing Plaintiff to properly effectuate service no later than November 21, 2016. In response, Xie submitted various form "Affidavit[s] of Mailing," which stated that a copy of the summons and complaint had been submitted via certified mail, return receipt requested, to Sklover & Company, LLC and Alan Sklover. <u>See</u>

---

[12] It is therefore unnecessary to consider the (unlikely) possibility that the Court may exercise personal jurisdiction over Defendants pursuant to other provisions of § 13-423. <u>See</u> Pl.'s Opp'n Donath MTD 1–2.

[13] The Court limits its discussion to Xie's attempts to serve the Sklover Defendants, as neither Donath nor Donath Law, LLC, contests service.

ECF Nos. 15, 17 & 18.  One of those affidavits attached tracking information from the U.S.

Postal Service, indicating a successful delivery on November 4, 2016, with an individual at

Sklover's Merrick, New York residence.  See ECF No. 18.  Later, in March 2017—after the

Sklover Defendants asserted improper service in their motion to dismiss—Xie submitted three

additional "Proof of Service" forms, all stating that a summons and complaint had been delivered

to Sklover's Merrick, New York address—twice via certified mail, and once via Federal Express.

See ECF Nos. 56, 57 & 60.  All three filings attached tracking information, and one of the filings

included a photograph of the return receipt sent along with the package.  See ECF No. 60.

Sklover does not contest that he received the various mailings outlined above.  Rather, he

argues that service of process was insufficient on three grounds: (1) that Xie did not effectuate

service within 90 days, the default service period under Federal Rule of Civil Procedure 4(m);

(2) that the mailings he received did not "include copies of all of the papers and pleadings that

[Xie] filed" with the Court; and (3) that proper service cannot be effectuated by certified mail.

Sklover MTD 8.

These arguments are unavailing.  First, regarding the 90-day window for service, Rule

4(m) provides as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court—
> on motion or on its own after notice to the plaintiff—must dismiss the action
> without prejudice against that defendant *or order that service be made within a
> specified time.  But if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.*

Fed. R. Civ. P. 4(m) (above).  In arguing for dismissal, the Sklover Defendants cite the first half

of Rule 4(m), but not the italicized portion.  Here, the Court set its own deadline for service, see

Minute Order, October 5, 2016, and Sklover & Company, LLC does not argue that it did not

receive a summons and complaint by that date (November 21, 2016).  Defendant Alan Sklover,

on the other hand, was not named until Xie filed her Fourth Amended Complaint, on December

14, 2016.  And Sklover concedes in his briefing that he received that complaint via mail shortly thereafter—i.e., within 90 days after that complaint was filed.  Sklover MTD 8.  True, Xie did not have leave to file that complaint, but the Court later granted such leave.  <u>See</u> Minute Order, Jan. 30, 2017.

Second, the Sklover Defendants contend that proper service must "include copies of all of the papers and pleadings" that have been filed with the Court.  Sklover MTD 8.  But they cite no authority for that proposition, and the Court is aware of none.  Rule 4 merely provides that "[a] summons must be served with a copy of the complaint," Fed. R. Civ. P. 4(c)(1), and specifies certain contents that the summons must include, such as the names of the parties and the "time within which the defendant must appear and defend," <u>id.</u> 4(a)(1).  The Sklover Defendants do not allege that Xie failed to serve them with a proper summons and complaint.  In fact, the exhibits they attach to their motion establish definitively that they received these required documents.  <u>See</u> Sklover MTD, Exhibit 4, ECF No. 39-18 (Service Packages Sent By Xie to Sklover Defendants).

Third, Sklover suggests that proper service cannot be effectuated by certified mail.  <u>See</u> Sklover MTD 8.  That is not the case, and to the extent the Court suggested otherwise in its October 5, 2016 Minute Order, it corrects itself now.  The Federal Rules provide that service may be effectuated upon an individual located in the U.S. by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(e)(1); <u>see also</u> <u>id.</u> 4(1)(A) (providing for service against a corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual").  The D.C. Superior Court Rules, in turn, provide that "service also may be effected by mailing a copy of the summons, complaint and initial order to the person to be served by registered or certified mail,

return receipt requested." D.C. Super. Ct. R. Civ. P. 4(c)(3). When the Court issued its October 5, 2016 Minute Order directing proper service, Xie had provided no evidence that her mailings had included return receipts. That deficiency was corrected by later filings. <u>See</u> ECF Nos. 15, 17, 18 & 60.

A separate provision of the D.C. Superior Court Rules of Civil Procedure states that when service is rendered using certified mail, the signed return receipt shall accompany the affidavit of mailing where "proof of service" is required. D.C. Super. Ct. R. Civ. P. 4(*l*)(2). However, the Sklover Defendants have not complained of inadequate *proof* of service, or anywhere contested their receipt of the relevant service documents. Indeed, they have attached those documents to their briefing. <u>See</u> Sklover MTD, Exhibit 4, ECF No. 39-18. In light of their undisputed receipt of service and knowledge of this suit, the Court finds—as an independent ground for its decision—that Defendants have been effectively served. <u>See, e.g.</u>, <u>Shaw v. D.C.</u>, 2006 WL 1371681, at *6 (D.D.C. 2006) (explaining that deeming a defendant served may be appropriate "where there [is] ample evidence that the defendant was . . . successfully served through the mail"); <u>Ali v. Mid-Atl. Settlement Servs., Inc.</u>, 233 F.R.D. 32, 36 (D.D.C. 2006) ("Where the defendant receives actual notice and the plaintiff makes a good faith effort to serve the defendant pursuant to the federal rule, service of process has been effective.").

For the above reasons, the Court declines to dismiss Xie's claims against the Sklover Defendants on the grounds that they were afforded insufficient process or service of process.[14]

---

[14] The Court will, however, deny Xie's Motion for Default Judgment against the Sklover Defendants, and grant the Sklover Defendants' Motion to Vacate the Defaults entered on February 9, 2017, "for good cause" shown. Fed. R. Civ. P. 55(c). The Court did not grant Xie leave to file her various amended complaints until January 2017, making the February default premature. The Sklover Defendants have also put forth good-faith (if ultimately unsuccessful) arguments that process was deficient.

## 2. *Failure to State a Claim*

As a final basis for dismissal, the Sklover Defendants contend under Rule 12(b)(6) that Xie's complaint fails to state a claim for relief.[15]  A legal malpractice claim requires a showing "(1) that there is an attorney-client relationship; (2) that the attorney neglected a reasonable duty; and (3) that the attorney's negligence resulted in and was the proximate cause of a loss to the client."  Chase v. Gilbert, 499 A.2d 1203, 1211 (D.C. 1985).  The Sklover Defendants contend that Xie has failed to plausibly show the second and third elements of such a claim.  They insist that they never breached any reasonable duty of care to Xie because they never promised to arbitrate or litigate any of her claims.  See Sklover MTD 13.  And they argue that Xie cannot show any damage proximately caused by their negligence—even if it is assumed—since she received the EEOC Notice herself and could have taken action on her own, or alternatively, because her underlying employment claims were frivolous.  See id. at 13–14, 16–18.  The Sklover Defendants also argue that Xie's remaining claims rise and fall with the legal malpractice claims, and therefore should also be dismissed.  See id. at 14–15.

None of these arguments carries the day.  First, as to whether Xie has plausibly alleged that Defendants breached of a reasonable duty of professional care, the Sklover Defendants frame the issue too narrowly.  The question is *not* whether they broke some specific "agree[ment] to represent [Xie] in the filing of a federal lawsuit or in the initiation of arbitration proceedings in the District of Columbia or in any other jurisdiction."  Sklover MTD 13.  The question is whether Xie has stated a plausible claim that Defendants were negligent in failing to

---

[15] The Sklover Defendants style their motion as being, "In the Alternative, [a] Motion for Summary Judgment."  Sklover MTD 1.  But their arguments apply the Rule 12(b)(6) standard, assuming the truth of the facts alleged in Xie's complaint (without necessarily conceding them).  See Sklover MTD 11 & n.2.  Accordingly, the Court applies the same standard, and will not convert the motion into one for summary judgment.

provide her with timely legal advice; failing to timely inform her that Donath had departed the firm; failing to assert all viable claims in Xie's administrative complaint; or failing to preserve her rights by timely filing suit. <u>See</u> Fourth Am. Compl. ¶ 39. Furthermore, the Sklover Defendants are incorrect in asserting that their retainer agreement with Xie specifically disavowed litigation or arbitration in the District of Columbia: On the contrary, as previously discussed, the agreement included a specific provision foreseeing the firm's appearance *pro hac vice*, and in communications with Fannie Mae, the firm repeatedly threatened to arbitrate or litigate against the company. <u>See</u> <u>supra</u> section III.A.2.

The Sklover Defendants' second line of argument is that, even assuming negligence on their part, Xie has failed to show that such negligence proximately caused her damage. Because Xie "could have initiated arbitration proceedings herself," and because "[n]othing prevented [her] from hiring a District of Columbia law firm and lawyers" to litigate her case, Defendants essentially argue that they are not responsible for any ultimate damage that resulted. Sklover MTD 14. These arguments, if accepted, would bar nearly every legal malpractice claim: When sued, the defendant-lawyer could simply fault the plaintiff-client for failing to proceed *pro se* or hire different counsel when faced with negligent counsel. Here, assuming the truth of Xie's allegations, faulting her is especially fraught, because she claims to have been abandoned by her counsel during a critical, 90-day period. If the alleged facts are true, this was hardly sufficient time to prepare a case, or start from ground zero with a new team of attorneys.

Next, the Sklover Defendants argue that proximate cause is also lacking because Xie's underlying employment claims were frivolous. Defendants are correct that to succeed on "a legal malpractice action in the District of Columbia, [a] plaintiff must demonstrate not only that the alleged malpractice was the proximate cause of the injury suffered, but also that the action

for which the plaintiff had sought the attorney's services was a good cause of action." <u>Macktal</u> <u>v. Garde</u>, 111 F. Supp. 2d 18, 21 (D.D.C. 2000) (citing <u>Niosi v. Aiello</u>, 69 A.2d 57, 59 (D.C. 1949)). At the pleadings stage, however, the Court merely asks whether Xie has alleged facts making it "plausible," <u>Iqbal</u>, 556 U.S. at 678, that she had a "good cause of action." In confirming that Xie has satisfied that burden, the Court need look no further than the demand letters Defendants submitted to Fannie Mae in connection with Xie's representation, which Xie referenced in her complaint and attached to briefing. <u>See</u> Fourth Am. Compl. ¶ 8; Pl.'s Opp'n Donath MTD, Ex. 4A, ECF No. 44-3. The letters set forth facially plausible claims of discrimination based on disability and national origin, plus FMLA violations.[16]

The Sklover Defendants cite the following evidence to argue that Xie's claims were "weak": (1) Xie's failure to obtain an arbitration award stemming from the claims; (2) the fact that Xie has been terminated by two other employers; and (3) an internal Fannie Mae investigation, finding that certain of Xie's claims were unsubstantiated. Sklover MTD 17–18. Regarding Xie's arbitration claims, they appear to have failed not on the merits, but due to statutes of limitation (and, allegedly, legal malpractice), <u>see generally</u> Pl.'s Opp'n Donath MTD, Ex. 3C, ECF No. 44-2. And as for Xie's supposed terminations, and Fannie Mae's internal investigation, such evidence is not properly considered at this stage, where the Court is limited to Xie's factual allegations and the documents referenced in her complaint. <u>See</u> <u>Tellabs</u>, 551 U.S. at 322.

Last, the Sklover Defendants urge the dismissal of Xie's remaining counts—for breach of contract and breach of fiduciary duty—because they turn on her legal malpractice claims. <u>See</u>

---

[16] Of course, the result might well be different at summary judgment, with a fuller record and a more exacting standard.

Sklover MTD 14–15.  Since the Court finds that Xie has plausibly made out claims of legal malpractice, there is no basis for dismissing her other claims.  The Court therefore rejects the Sklover Defendants arguments for dismissal under Rule 12(b)(6).

C.  <u>Donath Law, LLC's Motion to Dismiss</u>

Finally, the Court takes up Donath Law, LLC's dismissal motion.  Recall that, after formally leaving Sklover & Donath, LLC in March 2013, Donath took a leave of absence.  <u>See</u> Donath LLC MTD, Affidavit of Sheree Donath ("Donath Aff.") ¶ 8–10.  Later that year, she joined the law practice of Cory J. Rosenbaum, P.C.  <u>Id.</u>  She practiced there until March 2016, when she formed her own law firm—Donath Law, LLC.  <u>Id.</u> at ¶ 3.  This was several months after Xie first brought suit in this Court.  The firm is organized under New York law and located in New York.  <u>Id.</u> at ¶ 3.  None of its members or employees has ever appeared before a D.C. court or agency.  <u>Id.</u> at ¶ 7.  At no time has Xie been a client of Donath Law, LLC, and none of her claims arise out of any of the firm's acts or omissions.  In light of these uncontested facts, Donath Law argues that this Court lacks personal jurisdiction over it, and that Xie has failed to state a cognizable claim against it.  <u>See</u> Donath LLC MTD 6–12.

In response, Xie attempts to establish that Donath Law, LLC succeeded to the liabilities of Sklover & Donath, LLC.  She states her "reasonable belief" that Donath transferred assets first from Sklover & Donath, then to Cory J. Rosenbaum, and finally to Donath Law.  <u>See</u> Pl.'s Sur-Reply in Opp'n Donath MTD 2.  In support, she attaches a screenshot of Donath's LinkedIn profile, showing that she was a "Partner" (presumably with equity) at Cory J. Rosenbaum.  <u>Id.</u>, Attachment 20, ECF No. 54-20.  As a general rule, however, the mere fact that a business entity acquires assets from another does not establish successor liability.  Instead, "a corporation which acquires all or part of the assets of another corporation does *not* acquire the liabilities and debts

of the predecessor" absent one of the following four exceptions: "(1) there is an express or implied agreement to assume the liabilities; (2) the transaction amounts to a consolidation or merger; (3) the successor entity is a mere continuation or reincarnation of the predecessor entity; or (4) the transaction was fraudulent, not made in good faith, or made without sufficient consideration." LeSane v. Hillenbrand Indus., Inc., 791 F. Supp. 871, 874 (D.D.C. 1992).[17]

Xie has not alleged facts making it plausible that any of these exceptions apply to Donath Law.[18] She has not suggested that Donath Law expressly assumed Sklover & Donath's liabilities, nor can such an agreement be reasonably inferred, given that Donath was employed for more than two intervening years at a third, independent law firm before forming Donath Law, LLC. There is likewise no reason to conclude that Donath Law's formation "amount[ed] to a consolidation or merger" with Sklover & Donath. LeSane, 791 F. Supp. at 874. The "hallmarks" of such a "*de facto* merger" are "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." N.Y. v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006); see also LeSane, 791 F. Supp. at 875 (applying same factors under D.C. law). Of these quintessential traits, only the first is present here, and only partially—since Donath was

---

[17] The same test applies under New York law. See Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 245 (1983). Accordingly, there is no "true conflict" between the two bodies of law and no need to conduct further choice-of-law analysis. GEICO v. Fetisoff, 958 F.2d 1137, 1141 (D.C. Cir. 1992).

[18] Sklover & Company, LLC, by contrast, is conceded to be Sklover & Donath, LLC's successor. See Sklover MTD, Exhibit 1, Affidavit of Alan. L. Sklover, ECF No. 39-3 (describing Sklover & Company, LLC as "a law firm formerly operated under the names Sklover, Donath & Felber, LLC and Sklover & Donath, LLC").

a common partner of both entities. But that is clearly insufficient evidence of merger. For similar reasons, it is implausible that Donath Law is a "mere continuation or reincarnation of" Sklover & Donath, LeSane, 791 F. Supp. at 874. See Beach TV, 2016 WL 6068806, at *11 (observing that the *de facto* merger and mere continuation "exceptions are quite similar"). Finally, although Xie posits that Donath formed Donath Law, LLC in bad faith to avoid potential liability arising from this suit, she asserts no facts in support of that claim, besides the timing of the entity's formation. See Pl.'s Opp'n 2–3.

In short, Xie has failed to state a claim for relief against Donath Law, LLC. None of her claims arise from the actions or omissions of the firm, which was created *after* the filing of her complaint. And she has not alleged sufficient facts making it plausible that Donath Law, LLC has assumed any of Sklover & Donath's liabilities.

## IV. Conclusion

For the above reasons, the Court finds that Xie has failed to state a viable claim against Donath Law, LLC, and it will grant the firm's dismissal motion. The Court will, however, permit the survival of Xie's claims against the remaining Defendants.

*Christopher R. Cooper*
CHRISTOPHER R. COOPER
United States District Judge

Date: May 23, 2017

28